UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN MOORE, III,

     Plaintiff,

v.                             Case No. 3:21cv322-MCR-HTC

AWP WARDEN AMANDA RAIPH,
et al.,

     Defendants.

_____/

ORDER AND
REPORT AND RECOMMENDATION

     This matter is before the Court on the amended complaint filed by Plaintiff, John Moore, III, proceeding *pro se* and *in forma pauperis*. ECF Doc. 15. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). The amended complaint identifies the following ten (10) defendants: Sgt. Conner Rick,[1] Sgt. Lajiness, Capt. Hewitt, [Joan] Doe Nurse, James Stromenger, Investigator Comey, Assistant Warden Amanda Raiph, Major RN Rushing, Classification Officer Avant Carroll, and Classification C.K. Swier, who were or are

_____

[1] The original complaint listed this defendant as "Conner Ricks." ECF Doc. 1 at 2. The Plaintiff will be required to identify the actual name during discovery.

employees of the Florida Department of Corrections, at Walton Correctional Institution ("Walton CI").

Upon consideration, the undersigned finds Plaintiff's Eighth Amendment failure to protect claims against Defendants Sgt. Ricks, Captain Hewitt, and Sgt. Laijness are sufficient to be served. However, the Plaintiff is ordered to file a second amended complaint if he wants to proceed on the Eighth Amendment claims against Sgt. Ricks, Captain Hewitt, and Sgt. Laijness because the amended complaint is not compliant with this Court's local rules. Namely, amended complaint is more than twenty-five (25) pages long. N.D. Fla. Loc. R. 5.7(B). Also, the form of the complaint instructs Plaintiff that he is to attach no more than five (5) additional pages of statement of facts to the complaint. Here, Plaintiff attached twenty (20) extra pages.

Despite Plaintiff's failure to comply with Rule 5.7(B), the Court nonetheless, for judicial efficiency, screened the allegations in the amended complaint. For the reasons set forth below, the undersigned finds (1) the Fourteenth Amendment equal protection claim against Captain Hewitt and Sgt. Laijness, (2) the Eighth Amendment deliberate indifference claim against Nurse Joan Doe, and (3) the all claims against Defendants Stromenger, Comey, Raiph, Rushing, Carroll, and Swier *fail to state a claim* for which relief may be granted, even when liberally construed in favor of Plaintiff. Additionally, because Plaintiff has already had an opportunity to amend is complaint once and was specifically advised of the deficiencies in his

claims against these defendants, the undersigned finds that an additional opportunity to amend would be futile and, thus, recommends these claims be dismissed and these defendants be terminated.

## I.   THE AMENDED COMPLAINT

Plaintiff initiated this action on February 12, 2021, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF Doc. 1), alleging his constitutional rights were violated when he was an inmate at Walton CI.  Upon screening the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court, on March 31, 2021, found that Plaintiff had failed to state a claim for relief against all Defendants, other than Defendant Sgt. Ricks, and gave Plaintiff an opportunity to amend his complaint to allege facts sufficient to state a claim against the other Defendants. ECF Doc. 8.

On April 26, 2021, Plaintiff delivered an amended complaint to prison mail officials, which was docketed as ECF Doc. 15.  In the amended complaint, Plaintiff omits Captain Merritt, Investigator Mason, and Nurse Ragen as defendants.  Thus, the Court will direct the clerk to terminate these defendants.  Plaintiff also adds Captain Hewitt, Nurse Joan Doe and Major Rushing as defendants.  Thus, the Court will direct the clerk to add these defendants to the docket.  The crux of Plaintiff's allegations are that Defendants failed to protect him from an attack by another inmate who wanted him to participate in getting drugs into the prison.  Plaintiff alleges the Defendants were more interested in getting a drug bust than protecting him from

assault.  The following facts are taken from the amended complaint and treated as true for the purpose of screening the amended complaint.

On June 8, 2020, Plaintiff was working in a flower bed on the compound at Walton Correctional Institution ("Walton CI") and was approached by inmates Callija and Black, who told Plaintiff they were trying to get Fentanyl into the prison and asked Plaintiff to help them "move" Fentanyl.  *Id.* at 5.  He told them he did not want to be involved, but Callija threatened to "stab him up" to get him replaced in his job on the compound if he did not cooperate.  *Id.*

Plaintiff "went straight to the center gate" and contacted Captain Hewitt.  He told Captain Hewitt about the threat and asked Captain Hewitt to be placed in protective management.  Captain Hewitt did not grant the request; instead, he told Plaintiff "I'll take care of it" and ordered Plaintiff to get back to work.  Plaintiff then told Captain Hewitt that Callija was about to arrange a call to his dealer in Destin and expected Plaintiff to be present for the call.  Plaintiff told Captain Hewitt Plaintiff did not want to be involved and wanted to be "off compound."  To this, Captain Hewitt responded, "Let me call Sgt. Lajiness, who knows pretty much all gang members."  *Id.*

Later the same day, at around 1:45 p.m., Captain Hewitt arranged a meeting between Plaintiff and Sgt. Lajiness in the medical conference room.  *Id.* at 6. Plaintiff told Sgt. Lajiness that he "wanted off compound and I did not want to be a part of this . . . I don't want to get in no trouble and I'm not moving no dope and

they said if I didn't do it, they would stab me up." Plaintiff alleges "Sgt. J. Lajiness did not honor my request for protective management." *Id.* Instead, Sgt. Lajiness told Plaintiff "if you can help us identify everyone and the dealer," Sgt. Lajiness would get Plaintiff "out of the compound." *Id.*

Plaintiff then told Lajiness and Hewitt the call with the dealer was supposed to be at 2:00 p.m. in Plaintiff's dorm (C-2), so they ordered him to rush back to his dorm to be present for the call. The call did not take place, however, because Sgt. Ricks was in the dorm, which prevented Callija from getting into the dorm. As a result, Callija set the call for a different day. *Id.* at 6.

After that, Plaintiff began to work with "security" at the jail to identify inmates who had "touchscreens" and "finger phones." Plaintiff alleges he "was forced to be a part of this due to security not wanting [to] put me in [protective management]." *Id.* From June 8, 2020 to July 16, 2020, he helped "security" remove three (3) touchscreens and two (2) finger phones from inmates. *Id.*

Meanwhile, on June 9, 2020, Callija told Plaintiff that if Callija could be moved to Plaintiff's dorm, C-2, then they would not need Plaintiff to help "move dope" because Callija's brother was in that dorm. Plaintiff told Captain Hewitt of this statement by Callija, and Captain Hewitt moved Callija to dorm C-2 on June 14, 2020, and Sgt. Lajiness was "aware of the move and also aware of the purpose of the move." *Id.* at 6-7.

Callija set the call to the dealer for Wednesday, June 17, 2020, but before that could occur, on Monday, June 14, 2020, Callija was moved back to dorm A-2 and Plaintiff was moved to dorm B-1.  Plaintiff claims this placed him under "exigent circumstances" because Callija was "hot" and blamed Plaintiff, telling Plaintiff he had "messed up his drug route" and that Plaintiff "owed him 50 dollars for phone air time" and "he [felt] like I'm the reason all the phones [were] being found."  *Id.* at 10.

Captain Hewitt was out on vacation, so on June 26, 2020, Plaintiff told Sgt. Lajiness about the above statements by Callija and "stated again to Sgt. Lajiness that I wanted protective management and off the compound."  *Id.* at 10.  Lajiness did not move Plaintiff to protective management.  Instead, he stated, "[W]e really need to identify who [their] dealer is and how it [is] coming" and told Plaintiff that Captain Hewitt would move Callija back to dorm C-2 when he returned from vacation. Plaintiff told Callija that Hewitt would move him back to C-2 but, in his amended complaint, does not explain why Callija would believe that Plaintiff had the ability to influence this decision.

When Captain Hewitt returned on July 1, 2020, Plaintiff told him about the move of Callija to A-1 and the accusatory and threatening statements by Callija. Plaintiff again asked Captain Hewitt to be placed in protective management.  Captain Hewitt did not place him protective management but instead told Plaintiff, "These dudes are cowards.  I'll take care of it and move him back."  *Id.* at 10.

Callija was apparently not moved back to C-2 because on July 26, 2020, Callija "violated [to] C-2" and told Plaintiff "that I owe him a 100 dollars and I'm playing games with my boss, Captain Hewitt." *Id.* at 11. Plaintiff immediately went to the center gate where Captain Hewitt was with the tool cart. Plaintiff told him again that he wanted off the compound. He told Captain Hewitt Callija had forced him to pay him 50 dollars and now wanted 100 dollars from Plaintiff. *Id.* Captain Hewitt again told Plaintiff that he would take care of it and directed Plaintiff to get a shovel to start edging the sidewalks. Plaintiff told Captain Hewitt, "Cap'n, y'all going to get me killed," and Captain Hewitt joked that he bet no one would mess with Plaintiff when he had that shovel. *Id.*

The same day, Sgt. Cliffton and Sgt. Poe, who are not defendants, approached Plaintiff while he was working on the compound and told him to go to medical and wait for them. *Id.* at 11. Plaintiff did so and met with them, giving them "names of inmates who [were] moving drugs and who had phones so it could be [taken] back to Sgt. Lajiness." Plaintiff told them, "Y'all going to get me killed meeting here like this," to which Sgt. Cliffton responded, "We got you." *Id.*

On July 31, on the way to breakfast, Plaintiff passed by dorm A-2, and Callija yelled out the window to Plaintiff "You better have that 100 dollars when I come down there today or we gonna stab you up and get you off the compound." *Id.* at 11. After that, at 8:00 a.m. the same day, Plaintiff went to the officer station and told Dorm Sgt. Ricks that he "had been giving information to Sgt. Lajiness, [through]

Sgt. Cliffton, Sgt. Poe [and] Yard Officer Hartline." Plaintiff told Sgt. Ricks that he wanted to check into protective management because "Inmate Callija stated that he's coming to the dorm to get a 100 dollars from me being the police, and if I don't have it his brother and him going to stab me." *Id.* at 12.

Sgt. Ricks "did not honor [Plaintiff's] PM request," stating that "he didn't want to pack property or inventory property." Plaintiff asked Ricks to call Sgt. Lajiness right then, telling Sgt. Ricks, "I have to get off compound." Plaintiff had already started crying because he "felt I was going to be forced to defend myself, 'cause staff didn't care . . . they only all cared about getting info for a bust." *Id.* Sgt. Ricks then reminded Plaintiff he had a mental health callout to attend and that he, Sgt. Ricks, would call Sgt. Lajiness when Plaintiff got back from the callout. *Id.*

After the callout, Plaintiff returned to dorm C-2 to find Callija already there. Callija yelled to Plaintiff, asking if Plaintiff had the 100 dollars. Plaintiff alleges the following about his own mindset at that moment: "So I knew this wasn't going to stop, security didn't give a dam[n] about me (refused to remove me off compound) after having direct knowledge from me that I wanted no part of this." Although Plaintiff did not specify how the fighting started, he alleges he and Callija started fighting by dorm C-2's exit door until Callija knocked Plaintiff down. Sgt. Ricks watched the fight take place and also allowed inmates to violate in dorm as long as they got out before count time. Also, Sgt. Ricks allowed inmates to fight "as long as there's no weapon." *Id.* at 13.

While Sgt. Ricks looked on, Callija knocked Plaintiff down and walked off, stating he was going to get his knife, but then doubled back quickly and kicked Plaintiff in the mouth.  Plaintiff got up and headed towards the bathroom, and an unnamed inmate told Plaintiff "them chickos got knives and its 3 of them to your one." *Id.*  The inmate then handed Plaintiff a knife in a washcloth to protect himself.

Sgt. Ricks was still watching and had not "called it in until he see[s] me stab Inmate Callija coming back towards me fu[m]bling with something in his hand." *Id.* Near the phone area, Plaintiff was hit from behind by Pepe, one of Callija's gang brother's, while Yogi, another gang brother, held Plaintiff.  They all told Sgt. Ricks not to call it in, and Sgt. Ricks only called it in because of the weapon.  As security arrived, Plaintiff moved toward his locker to lock it and protect "about $1,000 in personal law books," security sprayed him, and he laid down on the ground to be cuffed. *Id.*

After the fight, Plaintiff was taken to medical and seen by the Joan Doe nurse for a required post-use-of-force exam. *Id.* at 14.  However, the nurse only listened to his lungs.  Once she did that, Captain Merritt (who is no longer a defendant) asked Plaintiff if he had any other injuries.  Plaintiff stated yes, that his "tooth is completely loose and hanging by the gum and hurts."  Captain Merritt said, "you leave it alone it will tighten back up on its own."  Despite Plaintiff's complaint about his tooth, the Joan Doe nurse did not examine Plaintiff's mouth, and Plaintiff was taken back to his cell. *Id.*  At dinner that night, Plaintiff declared a dental emergency but was

ignored and placed into his cell.  He spent the weekend "in pain with a tooth snapped in half, hanging by the gum."  *Id.*

Plaintiff was issued a disciplinary report ("DR") based on the incident.  On August 5, 2021, Investigator Comey met with Plaintiff, read the DR to him, gave him a copy at Plaintiff's cell but did not give him witness statement forms or camera forms at first.  After he asked for them, she gave him only the camera form and told him to write "camera" across top and did not let him explain what the camera would show.  He again asked for witness statement forms, but she ignored him, which resulted in Plaintiff not being allowed to call witnesses or even to make a statement himself during the DR process.  He also claims the camera and audio will show this and that he wrote a "request and grievance to preserve camera footage that administration did not honor or entertain."  *Id.* at 15.

Plaintiff was taken to DR court on August 6, 2020 with CO James Stromenger presiding.  During the hearing, Stromenger repeatedly cut Moore off and did not let him give his side of story.  Despite stating that he knew about the "$100 dollars wire" and Plaintiff's cooperation with discovering illicit phones, Stromenger still found Plaintiff guilty.  *Id.* at 16.  Plaintiff was never shown any evidence against him, was not allowed to make a statement, and was not allowed to show that the DR was false when it said Callija never struck him because Plaintiff had the injuries to prove it.  *Id.*  Stromenger also falsely stated in his findings that Plaintiff provided a statement and all relevant witness statements were considered.  *Id.* at 17.

After the hearing, Plaintiff was moved to close management as a result of an investigation and decision by the Institutional Classification Team ("ICT").   On August 10, 2020, during consideration of the referral to close management, Stromenger placed information in the record that Plaintiff was involved in gangs even though Stromenger had reason to know – through his involvement in another case involving Plaintiff -- that the gang affiliation information was false.  *Id.*  Also, defendants, Assistant Warden Raiph, Head of Classification Carroll and Major Rushing [the ICT ], met with Plaintiff on August 28, 2020 at his cell door.  Assistant Warden Raiph had already been put on notice "by way of Plaintiff's grievances" that Plaintiff had been cooperating with security about drugs and cell phones. Nevertheless, Raiph stated that the fight was because "You and Callija had dealings that didn't work out" and that "I [Plaintiff] could have cause[d] great bodily harm." *Id.* at 18.

Carroll and Raiph also both knew that the gang affiliation information placed in the record was false.  *Id.* at 19.  Plaintiff then alleges that "So for Asst. Warden Raiph to know this and Head Classification Ms. Carroll to do a cell front interview instead of doing it in the [ICT] hearing room was deliberate."  He does not explain how this harmed him, however.

Plaintiff asserts that once he told the ICT members about his cooperation with security concerning drugs and phones at the prison, about the false gang affiliation information placed in his file, and about Stromenger's denial of procedural

safeguards during the DR process, they had a duty to postpone the decision and investigate. He also claims state classification officer Swier knew the gang affiliation information was false, knew the incident was caused by Plaintiff's cooperation with security, and knew the DR process was procedurally lacking yet did not conduct a cell-front interview and simply "cho[se] to sign off on Plaintiff's improper CM referral." *Id.* at 34.

In the Statement of Claims section, Plaintiff brings one count against Sgt. Ricks for "Failure to Protect Pursuant to Eighth Amendment"; two counts against both Captain Hewitt and Sgt. Lajiness for (1) Failure to Protect Pursuant to Eighth Amendment and (2) Equal Protection to the 14th Amendment for disparate treatment from similarly situated inmates who requested PM; one count against Nurse Joan Doe for deliberate indifference to a serious medical need; two counts against both Investigator Comey and Officer Stromenger for (1) interference with his First Amendment right to petition the government for redress of grievances and (2) denial of procedural due process in violation of 14th Amendment regarding the DR investigation, hearing and finding; two counts against Asst. Warden Raiph, Head of Classification Carroll and Major Rushing for (1) denial of procedural due process in violation of 14th Amendment regarding the placement of Plaintiff in close management and (2) interference with Plaintiff's First Amendment right to petition the government for redress of grievances regarding his placement in close management; and one count against state classification officer Swier for violating

his 14th Amendment due process rights regarding his placement in close management.

In the Relief Requested section, he seeks $50,000 in compensatory damages for loss of tooth and unlawful placement on close management and $50,000 in punitive damages from each defendant.

## II.    LEGAL STANDARDS

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief against governmental employees, the Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B). In reviewing Plaintiff's complaint, the Court must read Plaintiff's allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## III.    DISCUSSION

As discussed in the Court's March 31, 2021 order, ECF Doc. 8, the failure to protect claim against Defendant Ricks is suitable for service. Additionally, the Court finds the failure to protect claims against Captain Hewitt and Sgt. Lajiness are sufficient to be served. However, for the reasons discussed below, the Court finds the equal protection claims against Captain Hewitt and Sgt. Lajiness, and the claims

against the remaining defendants -- dealing with the reclassification of Plaintiff to close management -- are due to be dismissed for failing to state a claim.

### A.    Fourteenth Amendment Equal Protection Claims

As stated above, Plaintiff alleges Capt. Hewitt and Sgt. Lajiness violated his rights to equal protection under the Fourteenth Amendment by failing to treat him the same way as other inmates who request protective management.  To plead an equal protection claim, a plaintiff must allege that "through state action, similarly situated persons have been treated disparately." *Thigpen v. Bibb Cnty., Ga., Sheriff's Dep't,* 223 F.3d 1231, 1237 (11th Cir.2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).  Even absent a certain class, a plaintiff can establish a "class of one" equal protection claim by showing he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, (2000).

Here, Plaintiff does not allege he was treated different because he was a member of any certain class, such as race.  Also, absent Plaintiff's conclusory allegation that he was treated differently from other inmates who requested protective management, he has alleged no facts showing the existence of such disparate treatment or other similarly situated person.  For example, Plaintiff has not identified any such inmates and has not provided any facts relating to how those other inmates were treated or the circumstances surrounding their request for

protection. Plaintiff's conclusory allegation of wrongdoing, alone, is not sufficient to support a claim.

To state an equal protection claim, plaintiff must allege "that he was similarly situated in all relevant aspects to inmates" who were treated better than he was. *Bumpus v. Watts*, 448 F. App'x 3, 5–6 (11th Cir. 2011). Plaintiff's failure to do so is fatal to his equal protection claim. *See Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) ("Given the complaint's complete lack of factual detail regarding the 'similarly situated' requirement, Leib's 'class of one' claim was properly dismissed.")

Moreover, the decision whether to put an inmate in protective management is highly individualized, and the circumstances of this case (as alleged by Plaintiff) are very unusual. Alleging a class-of-one equal protection claim when the decision involves such "discretionary application of a variegated set of factors" is "an onerous task." *Id.* (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 128 S.Ct. 2146, 2153, 170 L.Ed.2d 975 (2008) (noting the difficulty of establishing "class of one" equal protection claims where discretionary authority is exercised "based on subjective, individualized determinations")). Thus, the undersigned finds that allowing Plaintiff an opportunity to amend this claim would be futile. The undersigned recommends the equal protection claims against Capt. Hewitt and Sgt. Lajiness be dismissed.

**B.    Eighth Amendment Deliberate Indifference to a Serious Medical Need Claim Against Joan Doe Nurse**

Plaintiff alleges Defendant Jane Doe Nurse was deliberately indifferent to a serious medical need when she failed to check his mouth for injuries during the post-use of force examination.   To prevail on a § 1983 claim for such a violation, a prisoner "must show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."   *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). Plaintiff, however, has failed to allege facts sufficient to establish those elements.

First, as the Court advised Plaintiff in the amend order, a loose tooth does not necessarily rise to the level of an objectively serious medical need.   "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).   In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition.   *Id.*   In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm."   *Id.* (citing *Farrow*, 320 F.3d at 1243).

Also, although Plaintiff alleges he subsequently called a dental emergency when he was returned to his cell, and "sat in pain with a tooth snapped in half, hanging by the gum," there are no facts showing that the nurse was aware actually

aware of this at the time she examined him. Regardless, there are also no allegations that any delay in treatment worsened the condition. In fact, the amended complaint is completely devoid of any facts regarding the condition of the tooth after July 31, 2020.[2]

Second, even if Plaintiff were able to allege a serious medical need, Plaintiff has alleged no facts showing the nurse was actually aware of a serious medical need or that she deliberately disregarded that need by conduct that was more than mere negligence. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted). At most, based on Plaintiff's allegations, the nurse may have been negligent in not examining Plaintiff's mouth, but negligence does not rise to the level of deliberate indifference. *See Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir.1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim).

Therefore, the undersigned finds the deliberate indifference claim against Jane Doe Nurse fails to state a claim and, because Plaintiff already had an opportunity to cure the deficiencies with this claim, the undersigned finds an additional opportunity to be futile.

---

[2] The Court also notes that in the initial complaint, Plaintiff alleged that Captain Merritt told him to use sick call if he wanted to see dental.

### C.    Fourteenth Amendment Claims of Denial of Due Process in Placement in Close Management

Plaintiff brings claims under the Fourteenth Amendment against Investigator Comey, Officer Stromenger, Asst. Warden Raiph, Head of Classification Carroll, Major Rushing, and state classification officer Swier, all based on Plaintiff's placement in close management.  However, as Plaintiff was instructed in the Court's original amend order, ECF Doc. 8, prisoners cannot bring a § 1983 action based on placement in close management.

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994).  The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner - already deprived of liberty in the traditional sense - can be further deprived of liberty such that procedural due process protections are required.  Those two situations are when: (1) there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court"; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

As the Court instructed him with regard to the initial complaint, Plaintiff has not alleged facts showing his placement in close management rises to the level of an imposition of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," so as to create a liberty interest protected by due process. *See Quintanilla v. Bryson*, 730 F. App'x 738, 743 (11th Cir. 2018) (citing *Sandin*). In other words, the fact that Plaintiff was placed in close management, alone, cannot result in a due process violation.

Because Plaintiff failed to cure the deficiencies previously outlined to him in this amended complaint, the Court finds that a further opportunity to amend would be futile. Thus, the undersigned recommends these claims be dismissed.

### D. First Amendment Claims of Interference with Plaintiff's Right to Petition the Government for Redress of Grievances

Plaintiff's close management claims fair no better under the First Amendment. Plaintiff argues Investigator Comey, Officer Stromenger, Asst. Warden Raiph, Head of Classification Carroll, and Major Rushing violated his First Amendment rights by refusing to ensure Plaintiff was heard in a meaningful fashion during his disciplinary investigation and hearing. These allegations fail to state a claim because they simply do not fit within the recognized bounds of the Petition Clause of the First Amendment.

The First Amendment's "Petition Clause" provides that "Congress shall make no law ... abridging the freedom of speech, or ... the right ... to petition the

government for a redress of grievances." U.S. Const. Amend. I. "The First Amendment right to petition the government for a redress of grievances includes a right of access to the courts," *Bank of Jackson Cty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993), and also protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

Thus, the typical claim involving the Petition Clause in prisoner cases involves a prisoner being punished for filing a grievance or a lawsuit concerning the conditions of his imprisonment, s*ee, e.g., Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."), or government officials interfering with the prisoner's ability to file a grievance or a lawsuit, *see, e.g., Lewis v. Casey*, 518 U.S. 343, 350 (1996)(noting that U.S. Supreme Court had protected "right of access to the courts . . . by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents or file them, and by requiring state courts to waive filing fees or transcript fees for indigent inmates.") (citations omitted).

That, however, is not what Plaintiff is alleging in this case. He is not alleging he was unable to file grievances challenging the DR finding or file the instant lawsuit, and he is not alleging he was retaliated against for filing a grievance or

lawsuit.    Instead, he is challenging the procedures employed during his DR investigation and hearing.    The Court has not found a single case nationwide that applies the Petition Clause to the right of a prisoner to defend himself in a DR investigation and hearing.

To the contrary, Courts considering the manner in which a prisoner was allowed to defend himself in a DR hearing apply only the Fourteenth Amendment due process analysis from *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (procedural protections are triggered only by a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court"; or when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") and, if the prisoner meets the *Sandin* standard, *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974)(setting out the procedural due process protections when a DR proceeding may result in the loss of good time credits).

Thus, in attempting to apply the Petition Clause to his claims relating to his DR investigation and hearing, Plaintiff is trying to put a square peg in a round hole. The relief he seeks would be provided, if at all, only through a Fourteenth Amendment due process challenge.    These claims should therefore be dismissed for failing to state a claim.

## IV.    CONCLUSION

As set forth above, the undersigned recommends all claims against Defendants Raiph, Strombenger, Carroll, Comey, Rushing, Swier, and the Joan Doe Nurse be dismissed for failure to state a claim.    Additionally, the undersigned recommends the Fourteenth Amendment equal protection claim against Defendants Lajiness and Hewitt be dismissed for failure to state a claim.

The undersigned finds that dismissal of the claims discussed above, rather than allowing a further amendment, is appropriate.  The Plaintiff has been previously warned of the deficiencies of his claims and given a chance to correct them.  ECF Doc. 8.  Also, the undersigned finds, for the reasons stated above, that further amendment would be futile.  *See Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("district courts need not permit amendment where it would be futile to do so").

Also, dismissing these claims *sua sponte* is appropriate in this case.  A "district court can only dismiss an action on its own motion as long as the procedure employed is fair." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir.2006)).  To employ fair procedure, a district court must generally "provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1069 (11th Cir.2007).  A magistrate judge's report and recommendation provides such notice and opportunity to respond.  *See Shivers v.*

*Int'l Bhd. of Elec. Workers Local Union 349*, 262 F. App'x 121, 125, 127 (11th Cir. 2008); *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be *sua sponte* dismissed).

As to the Eighth Amendment claims against Ricks, Hewitt, and Lajiness, the Court finds those claims, as alleged, survive screening.   However, because the amended complaint is not compliant with the Court's Local Rules, Plaintiff must file a second amended complaint, which does not exceed twenty-five (25) pages. Additionally, Plaintiff should include in the second amended complaint only his failure to protect claim against Ricks, Hewitt, and Lajiness.   Once the second amended complaint is received, the Court will review it for service and if service is deemed to be appropriate, will request the Plaintiff send to the Court the appropriate number of service copies.

Accordingly, it is ORDERED that:

1.     The clerk is directed to terminate Merrit, Ragen, and Mason as defendants.

2.     The clerk is directed to add Hewitt, Joan Doe Nurse, and Rushing as defendants.

3.     The clerk shall send a section 1983 complaint form for use by prisoners to Plaintiff.  This case number shall be written on the forms, and "**Second Amended Complaint**" shall be typed on the complaint form.

4.    **Within twenty-one (21)** from the date of this order, Plaintiff shall file a second amended complaint, compliant with the instructions set forth herein, and which shall be typed or clearly written and submitted on the provided form.

It is further respectfully RECOMMENDED that:

1.    The Equal Protection Claims against Defendants Hewitt and Lajiness be DISMISSED for failure to state a claim.

2.    All claims against Defendants Stromenger, Comey, Raiph, Carroll, Rushing, Swier, and Joan Doe Nurse be DISMISSED for failure to state a claim.

3.    The clerk be directed to terminate as defendants Stromenger, Comey, Raiph, Carroll, Rushing, Swier, and Joan Doe Nurse.

4.    The matter be referred back to the undersigned for further proceedings on the Eighth Amendment failure-to-protect claims against Ricks, Hewitt and Lajiness.

At Pensacola, Florida, this 2nd day of June, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or

recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.